UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

SEAN RATTRAY,

    Plaintiff,

  v.

POLICE OFFICER JASON CAUDILL,
POLICE OFFICER JEREMY SENESE,
POLICY OFFICER JASON NELSON,
individually, and the CITY OF
EVANSTON, a municipal corporation,

    Defendants.

No. 14 CV 8735

Judge Manish S. Shah

**MEMORANDUM OPINION AND ORDER**

Plaintiff Sean Rattray encountered defendant police officers Jason Caudill and Jeremy Senese at a 7-Eleven near Rattray's home in Evanston. A fight broke out involving all three men. Defendant police officer Jason Nelson was dispatched to the scene to assist with Rattray's arrest. Criminal charges against Rattray were dropped three years later. Rattray now brings claims for excessive force against all defendants (Count I), and claims against Caudill and Senese for false arrest (Count II) and malicious prosecution (Count III). [31].[1] Caudill seeks summary judgment on the malicious prosecution claim and to strike the fourteenth-amendment allegations in the remaining claims against him; Nelson seeks summary judgment on Rattray's

---

[1] Bracketed numbers refer to entries on the district court docket. Rattray dismissed his false arrest and malicious prosecution claims against Nelson, and dismissed his *Monell* claim against the City of Evanston. [68]; [71]. Rattray also has a claim for indemnification against the City of Evanston, but it is not relevant to the motions for summary judgment at issue here.

excessive force claim, and Senese seeks summary judgment on Rattray's malicious prosecution claim.

For the following reasons, Caudill's motion for partial summary judgment is granted. Nelson and Senese's motion for summary judgment is granted in part as to the malicious prosecution claim and denied as to the excessive force claim.

**I. Legal Standards**

Summary judgment is appropriate if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). A genuine dispute as to any material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Justifiable inferences are drawn in the nonmovant's favor, *id*. at 255, and the party seeking summary judgment has the burden of establishing that there is no genuine dispute as to any material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

**II. Background**[2]

Rattray attended a get-together at the home of a friend, where he played cards and consumed cups of vodka. [73] ¶¶ 1–4; [76] ¶ 1. He left the get-together and walked to a 7-Eleven near his home in order to buy an ice cream bar. [73] ¶¶ 5–6; [76] ¶¶ 2–3. Officers Caudill and Senese were already inside the store when Rattray entered; the store clerk informed the officers that he did not want Rattray

---

[2] Caudill joins the other defendants' LR 56.1 statements and responses. [63] at 4; [77] at 2. [73] is Rattray's response to defendants' LR 56.1 statement; [76] is defendants' response to Rattray's LR 56.1 statement of additional facts.

there because Rattray had been involved in a previous incident at the store. [73] ¶¶ 7–8; [76] ¶¶ 4–5. Officer Caudill informed Rattray that he was not supposed to be in the store based on that prior incident. [73] ¶ 11. Rattray left the store and walked to his nearby home, and then he returned to the 7-Eleven specifically to speak with Officer Caudill. [73] ¶¶ 14–18; [76] ¶¶ 5–6. Officer Caudill immediately told Rattray to leave the store, and Rattray left, saying something (unspecified) to Officer Caudill as walked out; Officer Caudill did not respond. [73] ¶¶ 19–20.[3]

When the officers eventually exited the store, Rattray was outside. [73] ¶ 22.[4] A physical confrontation ensued between Rattray and Officer Caudill—the parties dispute who initiated the confrontation and where it initially occurred. [73] ¶ 23. Officer Senese testified that Rattray struck Officer Caudill and fought with both officers while they were trying to arrest him, and they called for backup because they were unable to restrain Rattray. [73] ¶¶ 24, 34. According to Rattray, he left the store without incident and went to his nearby home to workout in his backyard, but was followed and taunted by the officers. [76] ¶¶ 8–13. He testified that he stumbled and fell after Officer Caudill attempted to grab him, and that he was then beaten until he was unconscious. [73] ¶¶ 32–33; [76] ¶¶ 16, 21. The officers deny that Rattray was ever unconscious. [76] ¶ 21.

---

[3] Rattray's LR 56.1 statement says that he did not have any communications with the officers upon his second exit from the store, [76] ¶ 8, but he did not dispute the defendants' LR 56.1 statement that he said "something" to Officer Caudill as he left the store. [73] ¶ 20.

[4] While Rattray does not dispute this statement of fact, his version of the altercation with the officers is inconsistent with this statement.

3

Officer Nelson eventually arrived on the scene and assisted with handcuffing Rattray. [73] ¶ 35. Rattray does not recall Nelson or anything about Nelson's actions that day. [73] ¶¶ 37–39. Nelson, however, recalls Rattray aggressively resisting the officers and that in the attempt to handcuff Rattray, Nelson and Senese ended up on top of Rattray. Nelson punched Rattray in the abdomen with a closed fist, causing Rattray to fall down. [76] ¶¶ 18–20.

Rattray was charged with criminal trespass to real property in violation of 720 ILCS 5/21-3(a)(1), aggravated battery to a peace officer against Officers Caudill and Senese in violation of 720 ILCS 5/12-3.05(d)(4), and aggravated resisting a peace officer against Officers Caudill and Senese in violation of 720 ILCS 5/31-1(a-7). [73] ¶ 25. The charges against Rattray were terminated after the prosecutor entered a *nolle prosequi*. [73] ¶ 29. The certified statement of conviction/disposition for the underlying criminal proceedings does not provide a reason for why the *nolle prosequi* was entered, and the record is silent on the reason for its entry. [73] ¶¶ 30–31.

## III. Analysis

### A. Fourteenth Amendment

Caudill moves for summary judgment on Rattray's 42 U.S.C. § 1983 claims for excessive force and false arrest, arguing that Rattray improperly brought these claims under the Fourteenth Amendment. Although styled as a motion for summary judgment, Caudill merely requests striking the portions of Rattray's complaint alleging Fourteenth Amendment violations for these claims; Caudill does not request judgment in his favor on these claims in their entirety. (Rattray's excessive

4

force and false arrest claims cite to both the Fourth and Fourteenth Amendments. [31] ¶¶ 18, 21.) The due-process standards of the Fourteenth Amendment are inapplicable to Rattray's § 1983 claims. *See Graham v. Connor*, 490 U.S. 386, 395 (1989) (excessive force during arrest should be analyzed under Fourth Amendment and its reasonableness standard); *Albright v. Oliver*, 510 U.S. 266, 273–74 (1994) (Fourth Amendment, not Fourteenth Amendment, guides analysis of probable cause for arrest). Rattray does not argue otherwise or indeed respond to Caudill's arguments on this point, thus waiving any responsive arguments. *See Laborers' Int'l Union of N. Am. v. Caruso*, 197 F.3d 1195, 1197 (7th Cir. 1999). Rattray was not wrong to cite the Fourteenth Amendment in his complaint, however, because the Fourth Amendment "was incorporated against the states by the Fourteenth Amendment's Due Process Clause." *Contreras v. City of Chicago*, 119 F.3d 1286, 1290 (7th Cir. 1997). In that sense, Rattray's claims are brought under the Fourteenth Amendment; but just to be clear, fourth-amendment standards govern.

### B. Excessive Force

Nelson seeks summary judgment on Rattray's excessive force claim, contending that there is no evidence that he was present when Rattray was allegedly beaten or that he used excessive force on Rattray. But there are disputed issues of fact precluding summary judgment for Nelson on this claim. While Rattray does not actually recall anything about Nelson or Nelson's actions that day, [73] ¶¶ 37–39, Nelson testified that during the officers' attempt to handcuff Rattray, he was on top of Rattray at one point and punched Rattray in the abdomen with a

closed fist, causing him to fall down. [76] ¶¶ 18–20. Rattray may rely on Nelson's testimony to raise a genuine issue of fact.

Nelson's reply brief asserts additional arguments that any force used was justified under the circumstances and *de minimis*, and that therefore he should be entitled to qualified immunity. But Nelson has waived these arguments by omitting them from his opening brief. *See Billhartz v. C.I.R.*, 794 F.3d 794, 801 n.4 (7th Cir. 2015) ("[I]t is well-settled that arguments first made in the reply brief are waived."). Moreover, whether Nelson's actions were reasonable largely depends on the circumstances of the physical altercation between Rattray and the officers, including what was happening when Nelson was dispatched to the scene and the extent to which Rattray was resisting the officers (if at all). According to Rattray, the officers attacked him and beat him until he was unconscious, but according to the officers, Rattray attacked Caudill and then aggressively resisted the officers' attempts to restrain him. The reasonableness of Nelson's use of force varies significantly depending on either version of events, meaning that disputed facts preclude summary judgment for Nelson. *See Abdullahi v. City of Madison*, 423 F.3d 763, 773 (7th Cir. 2005) (since the excessive force reasonableness inquiry "nearly always requires a jury to sift through disputed factual contentions, and to draw inferences therefrom," summary judgment in excessive force cases "should be granted sparingly") (quoting in part *Santos v. Gates*, 287 F.3d 846, 853 (9th Cir. 2002)).

### C. Malicious Prosecution

Senese and Caudill seek summary judgment on Rattray's claim for malicious prosecution, arguing that Rattray cannot establish that his criminal proceeding was favorably terminated in a manner indicative of innocence.[5] Rattray responds that a *nolle prosequi* is evidence of a favorable termination and that dismissal of all charges in light of a strong case for prosecution is proof that the charges were dismissed because Rattray was innocent.

A plaintiff cannot recover for malicious prosecution unless he shows that the criminal proceeding at issue was terminated in his favor. *Logan v. Caterpillar, Inc.*, 246 F.3d 912, 924 (7th Cir. 2001). All of the charges against Rattray were terminated, and the certified statement of disposition states "nolle prosequi" but does not provide a reason for why it was entered; Rattray admits that the record is silent on the reason for its entry. [73] ¶¶ 29–31. This is not sufficient evidence to survive summary judgment. Dismissal pursuant to a motion *nolle prosequi* can constitute a favorable termination, but the plaintiff "bears the burden of showing that the *nolle prosequi* was entered for reasons consistent with his innocence," and "[t]his burden will only be met if the plaintiff establishes that '[t]he circumstances surrounding the abandonment of the criminal proceedings . . . compel an inference that there existed a lack of reasonable grounds to pursue the criminal prosecution.'" *Logan*, 246 F.3d at 925 (quoting in part *Swick v. Liautaud*, 169 Ill.2d 504, 513–14 (1996)). To determine whether proceedings were terminated in a plaintiff's favor,

---

[5] Caudill joins Senese's arguments on the malicious prosecution claim. [63] at 3.

courts "must look past the form or title of the disposition and examine the circumstances surrounding the entry of the *nolle prosequi*." *Id.* (citing *Cult Awareness Network v. Church of Scientology Int'l.*, 177 Ill.2d 267, 279 (1997)). For this reason, Rattray is incorrect that the entry of a *nolle prosequi*, by itself, is automatically a favorable termination indicative of innocence. *See id.* at 926 ("The bare use of a nolle prosequi order does not establish that the criminal proceedings were terminated in a manner indicative of the plaintiff's innocence."); *Washington v. Summerville*, 127 F.3d 552, 558 (7th Cir. 1997) ("A bare nolle prosse without more is not indicative of innocence. Lack of a recorded reason for the nolle prosequi offers no insight as to the validity or invalidity of [plaintiff's] position.").

The circumstances surrounding the entry of *nolle prosequi* must be examined to determine whether it was indicative of Rattray's innocence, but, as Rattray admits, the record is silent on this issue. [73] ¶ 31. For example, Rattray has not introduced any transcripts from the criminal proceedings or testimony from the state's attorney prosecuting the case to give context to the dismissal of the charges. Rattray argues that an inference of innocence can be drawn from the strength of the prosecution's case and the evidence that presumably would have been introduced at trial, but this is speculation on Rattray's part. With the record silent on the reason for the *nolle prosequi*, Rattray has not produced sufficient evidence to show that the charges were terminated in his favor in a manner indicative of innocence. *See, e.g., Logan*, 246 F.3d at 925–26 (affirming grant of summary judgment in defendants favor on malicious prosecution claim where the record lacked reason for entry of

8

*nolle prosequi*).[6] Defendants, therefore, are entitled to summary judgment on this count.

## IV. Conclusion

Caudill's motion for partial summary judgment, [63], is granted. Senese and Nelson's motion for summary judgment, [60], is granted in part as to the malicious prosecution claim (Count III), and denied as to the excessive force claim (Count II).

ENTER:

                                                                                    Manish S. Shah
                                                                                   United States District Judge

Date: 10/6/2016

---

[6] Rattray also argues that he can prove malice and the absence of probable cause, but no defendant sought summary judgment on either of those grounds. Regardless of probable cause or malice, Rattray cannot defeat a motion for summary judgment without evidence of a favorable termination indicative of his innocence. *See Gekas v. Vasiliades*, 814 F.3d 890, 896 (7th Cir. 2016) (summary judgment is the "put up or shut up" moment in a lawsuit when a party must show what evidence it has that would convince a trier of fact to accept its version of events).

9